UNITED STATES of America

v.

Frederick J. RAFF and John P.
Gilboy, Jr.

Crim. No. 12879.

United States District Court
M. D. Pennsylvania.

Feb. 21, 1958.

Oliver Dibble, Special Asst. to Atty. Gen., Robert J. Hourigan, U. S. Atty., Scranton, Pa., for plaintiff.

Warren, Hill, Henkelman & McMenamin, Scranton, Pa., for Frederick J. Raff.·

Russell J. O'Malley, Joseph P. Brennan, Scranton, Pa., for John P. Gilboy, Jr.

JOHN W. MURPHY, Chief Judge.

In addition to the indictment, charging seven defendants, including Gilboy and Raff, with conspiracy to defraud the United States, objections to which were found to be without merit in an opinion filed to No. 12880, United States v. Gilboy, D.C., 160 F.Supp. 442, a separate indictment charged Raff with offering a bribe, 18 U.S.C.A. § 201; Gilboy with accepting and receiving a bribe, Id. § 202; both with conspiracy to defraud the United States, Id. § 371.[1]  Raff attacks the sufficiency of Count I; Gilboy of

---

1. Each move to dismiss; for discovery and inspection; Raff for a bill of particulars; the government to quash Gilboy's subpoena duces tecum.  We shall not treat anew reasons already discussed, but only those raising new questions; in a new context, or stated with different emphasis.  Raff withdrew most of his reasons, including No. 3 covering Count I, reserving the right to object to the sufficiency of the evidence.  Gilboy's reliance on the XIV Amendment is misplaced.  See United States ex rel. Dong Wing Ott v. Shaughnessy, D.C.S.D. N.Y.1953, 116 F.Supp. 745, at page 749. As to self incrimination, see 27 Am.Jur. Indictments, etc., § 151; Note 28 A.L.R. 2d 225, 231, 232, 233, 234, 235, 236, 237,

Count II:[2] (a) it does not allege an offense; (b) it alleges two distinct offenses; (c) it is inconsistent with overt act 8 in Count III, overt act 31 in # 12880. Raff contends that Count III and # 12880 each charge the same conspiracy.

§ 201 provides, "Whoever promises, offers, or gives any money or thing of value, * * * to any officer or employee or person acting for or on behalf of the United States, or any department or agency thereof, in any official function, under or by authority of any such department or agency * * *, with intent to influence his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, or with intent to influence him to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States, or to induce him to do or omit to do any act in violation of his lawful duty, shall be * * *."

§ 202, "Whoever, being an officer or employee of, or person acting for or on behalf of the United States, in any official capacity, under or by virtue of the authority of any department or agency thereof, * * * asks, accepts, or receives any money, * * * promise, undertaking, obligation, * * * for the payment of money * * *, with intent to have his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, influenced thereby, shall be * * *."

The indictment avers that in the construction of the Tobyhanna Signal Depot, a military installation in this district, the United States, the Department of the Army under the direction and control of the Secretary of the Army, and the Army Corps of Engineers, engaged Gilboy, O'Malley and Stopper, a partnership, as Architect-Engineer to prepare and furnish reports, designs, drawings, and specifications for the construction and erection of certain facilities at the Depot and to furnish technical supervision of the construction thereof. Such supervision included (a) furnishing a Resident Engineer and staff of assistants and other personnel to supervise construction at the Depot to assure the work was done in accordance with approved drawings and specifications; (b) making field tests of the work and report as to conformity or non-conformity to specifications of materials, equipment and workmanship.

Gilboy, one of the partners, was in control of the management and affairs of the partnership and, as such, was a person acting for and on behalf of the United States in an official function under and by authority of the Department of the Army, i. e., an Architect-Engineer under contract with the Department to supervise and inspect construction and work at the Depot; in charge of inspection, and charged with the duty of supervising the work of other inspectors and making reports thereon to a representative of the Department—the Contracting Officer of the Corps of Engineers. It became and was the duty of Gilboy in his official function under the contract to decide and act on questions and matters pending before him in the inspection of said construction; to decide whether it complied with specifications of the Department; to recommend its acceptance or rejection; approve or disapprove the work and recommendations of inspectors under him; to make and forward reports to the Contracting Officer of the Corps of Engineers of the Department of the Army.

269, 273, 274, 276, 277, 289, 290, 300, 312, and see United States v. Dale, 7 Cir., 1955, 223 F.2d 181, at page 184. As to trial, see United States v. Scoblick, 3 Cir., 1955, 225 F.2d 779, 780, 781.

2. And Count III. We shall not repeat our discussion of the requirements of an indictment charging violation of § 371; except to state that Count III meets those tests.

Merritt, Chapman and Scott, under a General Contract, with the United States and the Corps of Engineers, to construct and erect certain utility systems, including the water and heating systems, and certain buildings and site improvements at the Depot, subcontracted the constructing, erecting and installing of certain plumbing and heating systems at the Depot to Frederick J. Raff of Hartford, Connecticut.

Count I then charges that on or about June 1, 1952, "at Tobyhanna and Scranton" in this district, Frederick J. Raff "* * * unlawfully, wilfully, knowingly and feloniously did offer and promise to give and to pay certain money, to wit, the sum of Ten Thousand Dollars ($10,000.00) in lawful currency of the United States to the said John P. Gilboy, Jr., who, as the said Frederick J. Raff then and there well knew, was then and there a person acting for and on behalf of the United States in an official function and by authority of the Department of the Army, as aforesaid, with intent on the part of him, the said Frederick J. Raff, to influence the decisions and actions of the said John P. Gilboy, Jr., on any questions, matters, causes, and proceedings which might at any time be pending and which might be brought before him, the said John P. Gilboy, Jr., in his official capacity and place of trust, as aforesaid, to wit, the inspection on behalf of the Department of the Army of said construction, and thereby to make opportunity for the commission of a fraud on the United States of America."

Incorporating by reference the preliminary allegations, Count II charges that, on or about October 20, 1952, "at Tobyhanna and at Scranton" in this district, John P. Gilboy, Jr., "a person acting for and on behalf of the United States in his official capacity as Architect-Engineer under and by virtue of the authority of the Department of the Army did knowingly, wilfully, unlawfully, and feloniously accept and receive of and from Frederick J. Raff a certain sum of money, to wit, the sum of Ten Thousand Dollars ($10,000) in currency of the United States, with the intent to have his, the said John P. Gilboy, Jr.'s decisions and actions on questions and matters which might at any time be pending before him and which might be brought before him in his official capacity and in his place of trust and profit, aforesaid, influenced thereby, to wit, the decisions and actions of the said defendant in connection with the inspections, and reports thereon, of the aforesaid work performed and to be performed by the said Frederick J. Raff."

■ The clear purpose of the statute is to protect the public from the consequences of corruption in the public service. Kemler v. United States, 1 Cir., 1942, 133 F.2d 235, at page 238. It is a major concern of organized society that the community have the benefit of objective evaluation and unbiased judgment on the part of those who participate in the making of official decisions. "* * * society deals sternly with bribery which would substitute the will of an interested person for the judgment of a public official as the controlling factor in official decision. The statute plainly proscribes such corrupt interference with the normal and proper functioning of government." United States v. Labovitz, 3 Cir., 251 F.2d 393.

■ In the face of such sweeping language in the statute, and the purpose it was designed to accomplish, we find no reason to find any intent on the part of Congress that the statute must be narrowly construed to exclude any person or any conduct fairly within the broad statutory ambit. To both sections federal courts have given an extremely liberal interpretation. See Wilson v. United States, 4 Cir., 1956, 230 F.2d 521, at page 524; United States v. Schanerman, 3 Cir., 1945, 150 F.2d 941, at page 943, and United States v. Glazer, D.C.Del. 1955, 129 F.Supp. 285, at page 286.

■ Assuming all well plead allegations to be true, Count I as to § 201, Count II as to § 202, each plead an offense in the very words of the statute; each definitely informs the accused of the

charge against him so that (1) he may prepare and present his defense without being surprised at the trial; (2) protect himself against another prosecution for the same offense. See United States v. Gilboy, supra, D.C., 160 F.Supp. 442; United States v. Angelo, 3 Cir., 1945, 153 F.2d 247, at page 250; United States v. Marcus, 3 Cir., 1948, 166 F.2d 497, at pages 500, 501, 503; Downs v. United States, 3 Cir., 1925, 3 F.2d 855, at page 857; United States v. Winnicki, 7 Cir., 1945, 151 F.2d 56, at page 58. As to the scope of coverage, see United States v. Holmes, 3 Cir., 1948, 168 F.2d 888, at page 891 and Whitney v. United States, 10 Cir., 1938, 99 F.2d 327, at pages 329, 330. Gilboy was a person acting for or on behalf of the United States in an official function by authority of the Department of the Army. Cf. United States v. Ingham, D.C.E.D.Pa.1899, 97 F. 935, and see Sears v. United States, 1 Cir., 1920, 264 F. 257, at pages 261, 262; Applebaum v. United States, 5 Cir., 1947, 164 F.2d 974; Browne v. United States, 6 Cir., 1923, 290 F. 870, at page 872. The intention was to influence his conduct in his official capacity and place of trust and to make opportunity for the commission of a fraud upon the United States. The dictum in United States v. Furer, D.C.S.D.Cal.1942, 47 F.Supp. 402, is not contra. The prime contractor there was a corporation; here a partnership. The indictment avers that Gilboy was in control of the management and affairs of the partnership. Cf. Sears v. United States, supra. As to employees, see Krichman v. United States, 1921, 256 U.S. 363, at page 366, 41 S.Ct. 514, at page 515, 65 L.Ed. 992, but cf. Hurley v. United States, 4 Cir., 1951, 192 F.2d 297, at page 300. While Gilboy had authority in the field to make decisions, it need not be final authority. Honesty at the top is not enough; it must run through the whole service. Sears v. United States, supra; and see Hurley v. United States, supra, 192 F.2d at page 300. That final disposition of the report rested with someone else is immaterial. United States v. Holmes, supra, 168 F.2d at page 891; United States v. Birdsall, 1914, 233 U.S. 223, at page 234, 34 S.Ct. 512, at page 516, 58 L.Ed. 930; Pipkin v. United States, 5 Cir., 1957, 243 F.2d 491; Woelfel v. United States, 4 Cir., 1956, 237 F.2d 484, 485, 488; Wilson v. United States, supra, 230 F.2d at pages 525, 526; Krogmann v. United States, 6 Cir., 1955, 225 F.2d 220, at page 225. Whether the attempt was successful or what Gilboy did in attempting to perform his side of the bargain is likewise immaterial. Id.; United States v. Schanerman, supra, 150 F.2d at page 943.[3] The act refers to decisions and actions. Krogmann v. United States, supra, 225 F.2d at page 224, and see United States v. Labovitz supra, "* * * 'it is immaterial whether the official action sought to be influenced be right or wrong'." Kemler v. United States, 1 Cir., 1942, 133 F.2d 235, 238, stated the controlling rationale as follows: "* * * Obviously no one would give or offer a bribe unless he expected to gain some advantage thereby, and since attempting to gain an advantage by this means is the evil which the statute is designed to prevent, it can make no difference if after the act is done the doer discovers that for some reason or

3. As to "official function" and "official capacity", see United States v. Ingham, supra, 97 F. at page 936; Krichman v. United States, supra, 256 U.S. at pages 365, 366, 41 S.Ct. at page 515. It includes those not officers who are performing duties of an official character. Id. Cohen v. United States, 9 Cir., 1944, 144 F.2d 984; Nordgren v. United States, 9 Cir., 1950, 181 F.2d 718, at page 720; and see United States v. Birdsall, supra, 233 U.S. at page 230, 234, 235, 34 S.Ct. at pages 514, 516. As to the distinction between "officers or employees" and "persons acting for the United States in an official function", see Hurley v. United States, 4 Cir., 1951, 192 F.2d 297, at pages 299, 300; Canella v. United States, 9 Cir., 1946, 157 F.2d 470, at page 481. As to intent, cf. United States v. Glazer, supra, 129 F.Supp. at pages 288–290; and see Applebaum v. United States, supra, 164 F.2d 974; Woelfel v. United States, supra, 237 F. 2d at pages 487, 488. See and cf. United States v. Labovitz, supra.

another, be it a mistake on his part or a mistake on the part of some officer or agency of the United States, there was actually no occasion for him to have done it. The statute is violated when a bribe is given or an offer to bribe is made regardless of the occasion therefor, provided it is done with the requisite intent and provided the acceptor or the offeree of the bribe is a person of the sort described in the statute."

■■ Count II alleges "at Tobyhanna and at Scranton" in this district Gilboy did "accept and receive of and from Frederick J. Raff a certain sum of money." Overt act 8 in Count III: "* * * Gilboy sent his man to * * Hartford, Connecticut, where he met Raff, who personally delivered the $10,-000.00 * * * to Gilboy's man." Overt act 31 in Indictment # 12880 reads: "* * * McGlinchey flew to * * * Hartford * * * where he met Raff, who personally delivered the $10,000.00 * * * to him." Gilboy argues that Count II charges two offenses. § 202 makes it an offense if one "asks, accepts, or receives". The commission of any one of these is unlawful. They may be charged in one count conjunctively. That does not make the count duplicitous. Proof of any of them would be sufficient to support a finding of guilt. Egan v. United States, 1923, 52 App.D.C. 384, 287 F. 958; United States v. Lutz, 3 Cir., 1944, 142 F.2d 985, at page 990; [4] F.R.Crim.Proc. 7(c), 18 U.S.C.A. As to pleading double jeopardy, see Crain v. United States, 1896, 162 U.S. 625, at page 636, 16 S.Ct. 952, page 955, 40 L.Ed. 1097.

■ While a charge should be stated with as much certainty as the circumstances permit and an accused reasonably informed as to time and place so that he may properly prepare to meet and defend the charge, Rule 7(c) requires only that the essential facts be averred. The test on a motion to dismiss is not whether the charge might be made more definite. United States v. Gilboy, supra, 160 F.Supp. at page 442; United States v. Debrow, 1953, 346 U.S. 374, at page 376, 74 S.Ct. 113, at page 114, 98 L.Ed. 92.

■ At common law it was necessary to aver the place of the offense in order to show jurisdiction in the court, enable the accused to prepare his defense, and to plead double jeopardy, and also to inform the sheriff so that he might know from what vicinage to summon the jury. Ball v. United States, 1891, 140 U.S. 118, at pages 133, 136, 11 S.Ct. 761, at pages 766, 767, 35 L.Ed. 377; Ledbetter v. United States, 1898, 170 U.S. 606, at page 613, 18 S.Ct. 774, at page 776, 42 L.Ed. 1162. The authorities are much less rigid in this respect than formerly. Id., 170 U.S. 613, 18 S.Ct. 776. See e. g.: Brown v. Elliott, 1912, 225 U.S. 392, at page 396, 32 S.Ct. 812, at page 813, 56 L.Ed. 1136, sustained an indictment which averred merely that the exact place and district were to the grand jurors unknown; Swafford v. United States, 8 Cir., 1928, 25 F.2d 581, 582. Andersen v. United States, supra, 170 U.S. at pages 489–492, 18 S.Ct. 692 "within the jurisdiction of this court"; "within the District", Burk v. United States, 4 Cir., 1950, 179 F.2d 305; Lowrey v. United States, 8 Cir., 1947, 161 F.2d 30 at 35, and see 27 Am. Jur. Indictments, etc. § 182, where place is not an essential averment.

"* * * Indeed, an indictment charging the offence to have been com-

---

4. Andersen v. United States, 1898, 170 U.S. 481, at pages 492, 500, 18 S.Ct. 689, at page 692, 42 L.Ed. 1116; United States v. Ansani, 7 Cir., 1957, 240 F.2d 216, at page 223; Troutman v. United States, 10 Cir., 1938, 100 F.2d 628, 631; Mellor v. United States, 8 Cir., 1947, 160 F.2d 757, at page 760; Smith v. United States, 5 Cir., 1956, 234 F.2d 385, 389; Johnson v. United States, 5 Cir., 1953, 207 F.2d 314, at pages 319, 320; Madsen v. United States, 10 Cir., 1947, 165 F.2d 507, 510. As to Count I see United States v. Kemler, D.C.Mass.1942, 44 F.Supp. 649, at page 651; United States v. Chandler, D.C.D.Mass.1947, 72 F.Supp. 230, 232, and cf. United States v. Michelson, 2 Cir., 1948, 165 F.2d 732.

mitted in one town is supported by proof that it was committed in a different town * * * within the jurisdiction of the court." Ledbetter v. United States, supra, 170 U.S. at page 614, 18 S.Ct. at page 777, and see United States v. Ansani, supra, 240 F.2d at page 223; Mellor v. United States, supra, 160 F.2d at page 765.

█ The letter and spirit of the Sixth Amendment " * * * are satisfied if, where a criminal purpose is executed, the criminal purpose be punished". Brown v. Elliott, supra, 225 U.S. at page 402, 32 S.Ct. at page 816.[5] "The distinction runs through the whole criminal law, and it is invariably enough to prove so much of the indictment as shows that the defendant has committed a substantive crime therein specified." Crain v. United States, supra, 162 U.S. at page 634, 16 S.Ct. at page 955.

█ While under other circumstances it has been suggested that "accept and receive" are legal equivalents and synonymous,[6] the statute reads "accepts or receives", i. e., two distinct methods of committing the offense. It must, therefore, be so interpreted in the present context. See Egan v. United States, supra, 287 F. at pages 961, 962, and cf. Burton v. United States, 1906, 202 U.S. 344, at page 377, 26 S.Ct. 688, at page 697, 50 L.Ed. 1057, 6 Ann.Cas. 362:

"It was certainly competent for Congress to make the agreement to receive, as well as the receiving of, the forbidden compensation separate distinct offenses. * * * There might be an agreement to receive compensation for services to be rendered without any compensation ever being in fact made, and yet that agreement would be covered by the statute as an offense. Or, compensation might be received for the forbidden services without any previous agreement, and yet the statute would be violated."[7]

██ On a motion to dismiss we are limited to the face of the indictment. United States v. Gilboy, supra, 160 F. Supp. at page 442. Where there are several counts each count must be regarded as if it was a separate indictment. Dunn v. United States, 1932, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161; Gozner v. United States, 6 Cir., 1925, 9 F.2d 603, 604; Murphy v. United States, 6 Cir., 1943, 133 F.2d 622, 627.

█ Assuming the truth of all well plead allegations we must assume the offense charged occurred in this district. United States v. Valle, D.C.S.D.N.Y. 1955, 16 F.R.D. 519, 521. We cannot speculate on the evidence or how the government will undertake to prove the charge.[8]

---

5. As to surplusage, see Rule 7(d); a grammatical infelicity, Malatkofski v. United States, 1 Cir., 1950, 179 F.2d 905, 909, 912; Stumbo v. United States, 6 Cir., 1937, 90 F.2d 828, 831; Madsen v. United States, 10 Cir., 1947, 165 F.2d 507, at page 509; Canella v. United States, supra, 157 F.2d at page 479; as to repugnancy, United States v. Briggs, D.C.D.C.1944, 54 F.Supp. 731.

6. United States v. Winnicki, 7 Cir., 1945, 151 F.2d 56, at page 57; United States v. Wainer, 7 Cir., 1948, 170 F.2d 603, at page 606; United States v. Segelman, D.C.W.D.Pa.1949, 86 F.Supp. 114, 119; Standard Oil Co. of Indiana v. United States, 7 Cir., 1908, 164 F. 376, at page 390, and see Whitney v. United States, 10 Cir., 1938, 99 F.2d 327, 329, 330, where the terms are used interchangeably; but

see United States v. Piazza, 2 Cir., 1945, 148 F.2d 334; United States v. Marcus, 3 Cir., 1948, 166 F.2d 497, at pages 501, 502; Pipkin v. United States, 5 Cir., 1957, 243 F.2d 491; Lunsford v. United States, 10 Cir., 1952, 200 F.2d 237, 238.

7. See Note 52 A.L.R. 816. On interpreting statutes, see United States v. Universal C.I.T. Credit Corp., 1952, 344 U.S. 218, at page 221, 73 S.Ct. 227, at page 229, 97 L.Ed. 260.

8. See e. g., Goodloe v. United States, 1950, 88 U.S.App.D.C. 102, 188 F.2d 621; United States v. Marcus, supra, 166 F. 2d at page 502; Lunsford v. United States, supra, 200 F.2d at page 238; Caminos v. Territory of Hawaii, 9 Cir., 1951, 191 F.2d 148. A charge of receiving directly and proof of a go-between. United States v. Gillette, 2 Cir., 1951,

· We do not on a motion to dismiss stop to compare this indictment with #12880. See United States v. Gilboy, supra, 160 F.Supp. at page 442; United States v. Connelly, D.C.D.Minn.1955, 129 F. Supp. 786, at page 791. As to pleading an offense in various forms, see Id., Rule 7(c); United States v. Universal C. I. T. Credit Corp., supra, 344 U.S. at page 225, 73 S.Ct. at page 231. As to multiple indictments, see United States v. Strewl, 2 Cir., 1938, 99 F.2d 474, at page 477; 27 Am.Jur. Indictments, etc., §§ 16, 139. Here only one offense contra § 202 is charged. It may well be that there is no inconsistency between the several averments in the light of applicable legal principles between Count II, overt act 8 in Count III, and overt act 31 in # 12880. We do not here pass judgment upon whether or not Count III and # 12880 charge the same offense. That question may better be determined on a plea of double jeopardy. See Poffenbarger v. United States, 8 Cir., 1927, 20 F.2d 42, at page 45; Gavieres v. United States, 1911, 220 U.S. 338, 341, 343, 31 S.Ct. 421, 55 L.Ed. 489; Morgan v. Devine, 1915, 237 U.S. 632, 639 et seq., 35 S.Ct. 712, 59 L.Ed. 1153; Carter v. McClaughry, 1902, 183 U.S. 365, 395, 22 S.Ct. 181, 46 L.Ed. 236; Burton v. United States, supra, 202 U.S. at page 381, 26 S.Ct. at page 698; United States v. Gilboy, supra, 160 F.Supp. at page 442, and see Powe v. United States, 5 Cir., 1926, 11 F.2d 598. In Short v. United States, 4 Cir., 1937, 91 F.2d 614, at pages 620 et seq., 112 A.L.R. 969, the question was held to be one for the jury. In Miller v. United States, 7 Cir., 1925, 4 F.2d 228, at page 230, the question was raised after the evidence was in.

Raff's request for a bill of particulars seeks to obtain the government's evidence and legal theories and is there-fore denied. See United States v. Gilboy, supra, 160 F.Supp. at page 442; United States v. Brennan, D.C.D.Minn. 1955, 134 F.Supp. 42, at pages 52, 53; United States v. Klein, D.C.S.D.N.Y. 1954, 124 F.Supp. 476, at page 479.

As to defendants' motions for discovery and inspection, we reiterate the position taken in United States v. Gilboy, supra, 160 F.Supp. at page 442. Raff's second request calls for government evidence beyond the scope of Rules 16, 17 (c); likewise as to his request No. 5, compliance with which would unduly tend to limit the prosecution since Tucker is also under indictment.

Orders in compliance herewith will be filed this date.

---

189 F.2d 449, 451; Eley v. United States, 6 Cir., 1941, 117 F.2d 526, 528; United States v. Klosterman, D.C.E.D. Pa.1957, 147 F.Supp. 843, at pages 846, 847, reversed on other grounds 3 Cir., 1957, 248 F.2d 191; Nye & Nissen v. United States, 1949, 336 U.S. 613, at pages 618–620, 69 S.Ct. 766, at pages 769–770, 93 L.Ed. 919, as to aiding and abetting, and see 18 U.S.C.A. § 2; cf. Krogmann v. United States, 6 Cir., 1955, 225 F.2d 220, at page 227.